IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE

MARKEITH WILSON,           )
                           )
       Plaintiff,          )
                           )
v.                         )   No. 12-1222-T
                           )
COMMISSIONER OF SOCIAL     )
SECURITY ADMINISTRATION,   )
                           )
       Defendant.          )

ORDER AFFIRMING DECISION OF COMMISSIONER

Plaintiff filed this action to obtain judicial review of the Commissioner's final decision denying his application for supplemental security income ("SSI") under Title XVI of the Act, 42 U.S.C. §§ 1381 *et seq.* Plaintiff received SSI as a minor. His claim was reevaluated upon his reaching the age of eighteen, and it was determined that his disability ceased as of April 2007. Thus, SSI benefits were terminated.

Plaintiff appealed the redetermination decision. Following a hearing, the ALJ issued an unfavorable decision in May 2009. Plaintiff sought review of the unfavorable decision by the Appeals Council. While Plaintiff's request for review was pending with the Appeals Council, Plaintiff protectively filed another application for SSI benefits, alleging disability beginning May 19, 2009.

On February 26, 2010, the Appeals Council granted Plaintiff's request for review, vacated the ALJ's unfavorable decision, and remanded the claim to the ALJ for additional

consideration. The Appeals Council considered Plaintiff's July 7, 2009 SSI application to be duplicative of the case before it and ordered the ALJ to associate Plaintiff's second application with the case being remanded and issue a consolidated decision.

A hearing was conducted on February 17, 2011. The ALJ issued an unfavorable decision on June 17, 2011. The Appeals Council affirmed the ALJ's decision. This decision became the Commissioner's final decision. Plaintiff then filed this action. For the reasons set forth below, the decision of the Commissioner is AFFIRMED.

A Social Security claimant may obtain judicial review of any final decision made by the Commissioner after a hearing to which he was a party. 42 U.S.C. § 405(g). "The court shall have the power to enter, upon the pleadings and transcript of the record, a judgment affirming, modifying, or reversing the decision of the Commissioner of Social Security, with or without remanding the cause for a rehearing." Id. The court's review is limited to determining whether or not there is substantial evidence to support the Commissioner's decision, id.; Jones v. Commissioner, 336 F.3d 469, 478 (6th Cir. 2003) (citing Wyatt v. Secretary, 974 F.2d 680, 683 (6th Cir. 1992)), and whether the correct legal standards were applied. Landsaw v. Secretary, 803 F.2d 211, 213 (6th Cir. 1986).

The Commissioner, not the court, is charged with the duty to weigh the evidence, to make credibility determinations and resolve material conflicts in the testimony, and to decide the case accordingly. See Crum v. Sullivan, 921 F.2d 642, 644 (6th Cir. 1990). When substantial evidence supports the Commissioner's determination, it is conclusive, even if

substantial evidence also supports the opposite conclusion. Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986).

Plaintiff was born on June 26, 1988, and was twenty one years old at the time of the filing of his second application for benefits on July 7, 2009. R. 251-252. He completed the eleventh grade and attended special education classes. R. 710, 717. Plaintiff has no past relevant work. R. 708, 722. Plaintiff alleges that he can not work because he has been a slow learner since birth, R. 56, and has depression. R. 317.

In the decision, the ALJ enumerated the following findings: (1) Plaintiff attained the age eighteen on June 20, 2006, and was eligible for SSI benefits as a child for the month preceding the month in which he attained age eighteen; Plaintiff was notified that he was found no longer disabled as of April 1, 2007, based on a redetermination of disability under the rules for adults who file new applications; (2) Plaintiff filed a new application for SSI payments on July 7, 2009, and the remand renders it duplicative (3) Since April 1, 2007, Plaintiff has had the following severe impairment: borderline intellectual functioning; however, the evidence does not establish medical findings which meet or equal in severity the clinical criteria of any impairment listed in Appendix 1, Subpart P, Regulation No. 4; (4) Plaintiff has the residual functional capacity to perform the full range of work at all exertional levels but is limited to simple, routine, repetitive work tasks that do not require more than level one verbal reasoning; (5) Plaintiff has no past relevant work; (6) Plaintiff was a younger individual on his alleged onset date; (7) Plaintiff has a limited education; (8) Transferability of job skills is not an option because Plaintiff has no past work relevant work;

(9) Based on Plaintiff's age, work experience, education, and residual functional capacity, there are a significant number of jobs in the national economy which he can perform; (10) Plaintiff was not under a disability as defined in the Act at any time through the date of this decision.

The Social Security Act defines disability as the inability to engage in substantial gainful activity. 42 U.S.C. § 423(d)(1). The claimant bears the ultimate burden of establishing an entitlement to benefits. <u>Born v. Secretary</u>, 923 F.2d 1168, 1173 (6th Cir. 1990). The initial burden of going forward is on the claimant to show that he is disabled from engaging in his former employment; the burden of going forward then shifts to the Commissioner to demonstrate the existence of available employment compatible with the claimant's disability and background. <u>Id.</u>

The Commissioner conducts the following, five-step analysis to determine if an individual is disabled within the meaning of the Act:

> 1. An individual who is engaging in substantial gainful activity will not be found to be disabled regardless of medical findings.
>
> 2. An individual who does not have a severe impairment will not be found to be disabled.
>
> 3. A finding of disability will be made without consideration of vocational factors, if an individual is not working and is suffering from a severe impairment which meets the duration requirement and which meets or equals a listed impairment in Appendix 1 to Subpart P of the regulations.
>
> 4. An individual who can perform work that he has done in the past will not be found to be disabled.

> 5. If an individual cannot perform his or her past work, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed.

Willbanks v. Secretary, 847 F.2d 301 (6th Cir. 1988). Further review is not necessary if it is determined that an individual is not disabled at any point in this sequential analysis. 20 C.F.R. § 404.1520(a).

The five-step sequential evaluation for redetermination differs from the adult sequential evaluation. Instead of beginning with whether the claimant is engaged in substantial gainful work activity, see 20 C.F.R. § 416.920(a)(i), this evaluation begins with the question whether there is a medically severe impairment, 20 C.F.R. § 416.920(a)(4)(ii), (c), followed by whether the claimant has an impairment that meets or equals a listed impairment from the Listing of Impairments of Appendix 1. 20 C.F.R. § 416.920(a)(4)(iii), (d). At the third step, the ALJ assesses the claimant's residual functional capacity for use at the fourth and fifth steps as to whether the claimant can perform past relevant work or any other work. See 20 C.F.R. § 416.920(a)(4) (iv)-(v), (e)-(g).

Here, the sequential analysis proceeded to the fifth step. The ALJ found that Plaintiff can perform a significant number of jobs in the national economy and, therefore, is not disabled.

Plaintiff contends that substantial evidence does not support the ALJ's finding that he suffers from borderline intellectual functioning, as opposed to mental retardation, and that he does not meet the severity requirements of Listing 12.05(C) (Mental Retardation). Plaintiff's arguments are not persuasive.

> Listing 12.05(C) provides:
>
> The required level of severity for this disorder is met when the requirements in A, B, C, or D are satisfied.
> . . .
> C. A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function....

In order to meet Listing 12.05(C), a claimant's impairment must satisfy the diagnostic description in the introductory paragraph to 12.05 <u>and</u> the criteria in paragraph C of 12.05. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.00(A) (Introduction). Thus, Listing 12.05(C) involves three criteria: (1) mental retardation, i.e., significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period, i.e., the evidence demonstrates or supports onset of the impairment before the age of twenty-two; (2) a valid verbal, performance or full scale IQ of 60 through 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation of function. <u>See</u> 20 C.F.R. Pt. 404, Subpt. P, App. 1 § 12.05C. A claimant may meet or equal Listing 12.05(C) only if he meets or equals all three elements. 20 C.F.R. §§ 404.1525-1526; <u>West v. Commissioner</u>, 2007 WL 1991059 (6th Cir.) (A claimant must make three showings to satisfy Listing 12.05(C)). The burden of proof at this level of the sequential evaluation is on the plaintiff. <u>See</u> <u>Zebley v. Sullivan</u>, 493 U.S. 521, 530 (1990).

Thus, in the present case, to be found entitled to SSI benefits, Plaintiff must establish that: (1) his valid verbal, performance, or full scale IQ score was between 60 and 70; (2) he

had significantly subaverage general intellectual functioning with deficits in adaptive functioning, which manifested prior to age 22; and (3) he has a mental or physical impairment imposing an additional and significant work-related limitation. See Foster v. Halter, 279 F.3d 348, 354-55 (6th Cir. 2001) (for a claimant to meet Listing 12.05, he "must demonstrate three factors to satisfy the diagnostic description: (1) subaverage intellectual functioning; (2) onset before age twenty-two; and (3) adaptive-skills limitations," in addition to the criteria under A, B, C, or D of Section 12.05). Therefore, the issue is whether Plaintiff meets the requirement of significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the developmental period (before the age of twenty-two). Plaintiff has not met his burden of showing that he met all the requirements of Listing 12.05.

The ALJ concluded that Plaintiff did not meet Listing 12.05C because he did not have the requisite deficits in adaptive functioning. Substantial evidence supports this finding. "Adaptive functioning" involves an individual's "effectiveness in areas such as social skills, communication, and daily living skills, and how well the person meets the standards of personal independence and social responsibility expected of his or her age by his or her cultural group." Heller v. Doe by Doe, 509 U.S. 312, 329 (1993), citing *Diagnostic and Statistical Manual of Mental Disorders*, pp. 28–29 (3d rev. ed.1987); see also West v. Commissioner, 240 Fed. Appx. 692, 698 (6th Cir. 2007) ("Adaptive functioning includes a claimant's effectiveness in areas such as social skills, communication, and daily living skills.").

In reaching his decision, the ALJ looked at the following evidence. Although Plaintiff points to IQs score lower than 70,[1] those scores were somewhat suspect. See Shepherd v. Sullivan, 889 F.2d 1088, at *1 (6th Cir. 1989) ("IQ test was invalid due to bad faith and malingering"). Plaintiff's activities showed that he was able to function at a higher level than reflected in formal intelligence testing. Furthermore, he did not demonstrate deficits in adaptive functioning.

Anne McSpadden, Ph.D., performed a psychological evaluation of Plaintiff in March 2007, when Plaintiff was eighteen years old. R. 147-54. Dr. McSpadden administered an IQ test, and Plaintiff achieved scores of 67 (verbal), 74 (performance), and 67 (full scale). R. 20, 150. Dr. McSpadden diagnosed Plaintiff with mild mental retardation. R. 152. The ALJ reasoned that even if the IQ scores were valid, Plaintiff's adaptive functioning precluded a diagnosis of mental retardation. See 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05; Daniels v. Commissioner, 70 Fed. Appx. 868, 872-73 (6th Cir. 2003) (noting that, while the ALJ recognized the claimant's IQ score of 67, she was not mentally retarded because she appeared to function at a level exceeding her test score).

In February 2009, Robert Kennon, Ph.D., a consultative psychologist, administered an IQ test. R. 181. Plaintiff scored in the 40 range. R. 20, 181. Dr. Kennon found the scores to be invalid because Plaintiff's test results "demonstrated evidence of dissimilation." R. 181.

---

[1] Plaintiff points to IQ test scores in the 40-60 range that he obtained when he was five and thirteen years old. R. 365-67, 377-80. The Commissioner considers IQ test results obtained between ages seven and sixteen current for two years when the IQ is 40 or above. 20 C.F.R. pt. 404, subpt. P, app. 1, §112.00(D)(10). Thus, the ALJ properly found that the passage of time invalidated those scores.

Dr. Kennon further stated that Plaintiff's "performance today was clearly indicative of attempts to portray himself in a negative light." R. 182. He diagnosed Plaintiff with "Dissimilation." R. 183.

In November 2009, William Sewell, Ph.D., administered an IQ test and found Plaintiff's tests results to be extremely low. R. 464. Dr. Sewell considered the scores to be invalid because Plaintiff was "feigning mental cognitive deficits." R. 20, 465. Dr. Sewell diagnosed malingering. R. 465.

In April 2010, Dr. Kennon administered another IQ test, and Plaintiff scored in the 40-50's. R. 491. Dr. Kennon again found the scores invalid. Plaintiff "demonstrated obvious attempts to portray himself in a negative light. There were obvious signs of malingering. His test scores are not believed to be valid." Id. Dr. Kennon diagnosed malingering. R. 492.

David Pickering, Ph.D., administered IQ tests to Plaintiff in February 2011. R. 21, 682. On the Shipley IQ test, Plaintiff attained scores of 67 (verbal), 79 (abstraction), and 70 (full scale). R. 682. On the Revised Beta IQ test, Plaintiff had a nonverbal score of less than 60. Dr. Pickering opined that Plaintiff's scores were valid but that Plaintiff met only **partial** criteria for a diagnostic impression of mild mental retardation. Nevertheless, he diagnosed Plaintiff with mild mental retardation. R. 21, 684. Dr. Pickering supported his diagnosis of mild mental retardation by opining that Plaintiff had significantly subaverage intellectual functioning, adaptive functioning deficits, and onset before age eighteen. R. 21, 683-84.

The ALJ gave Dr. Pickering's diagnosis minimal weight and pointed to evidence in the record that Plaintiff was not as functionally limited as opined by Dr. Pickering. For

example, Plaintiff expressed excitement about the 2008 presidential election. R. 445. He maintained a "MySpace" social media page and wanted to meet the President of the United States. R. 32-34. Plaintiff enjoyed basketball games. R. 488. He was reported to be independent with respect to his personal hygiene, dressing appropriately, obtaining regular nutrition, doing laundry, and housekeeping. R. 71-74, 344-51, 488, 612, 636. He babysat his siblings at times. R. 640. These activities are inconsistent with deficits in adaptive functioning. In addition, a June 2007 multidisciplinary assessment by Pathways of Tennessee noted that Plaintiff's strengths included good verbal skills, independent activities of daily living, openness to learning new behaviors, and potential for employment/school. R. 670.

The ALJ also determined that Plaintiff's attempts to negatively influence the findings of the consultative examinations by Dr. Kennon and Dr. Sewell showed a level of adaptive functioning inconsistent with mental retardation. Based on this evidence, the ALJ could reasonably conclude that Plaintiff had a severe impairment of borderline intellectual functioning rather than mental retardation.

Plaintiff also failed to establish that he suffered from an impairment imposing an additional and significant work-related limitation of function. See 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05. He alleges that he has depression and anxiety, which interfere with his ability to perform basic work functions. See 20 C.F.R. § 416.921 (noting an impairment is severe if it significantly limits a claimant's ability to perform basic work activities). Plaintiff presented to Pathways of Tennessee in June 2007 for mental health care complaining of a change in his mental status and dysfunction of daily living. R. 17, 661. Plaintiff's mood was

happy, and his attention and concentration were good. R. 688. Plaintiff's impulse control was fair, his insight poor, and he lacked social judgment. The intake clinician, an MSW, diagnosed Plaintiff with depression, agoraphobia, and mild retardation. R. 669.

In January 2008, Anthony Lake, FNP, diagnosed Plaintiff with depression and agoraphobia without history of panic attacks, prescribed medication, and noted "some improvement" with medication. R. 448. Plaintiff reported that the medication improved his mood. R. 447. In January 2009, Plaintiff reported that his energy level was good, his attention and concentration were "ok," and the medication made him feel better. R. 444. In June 2009, Plaintiff reported being too scared and anxious to get a job, and the dosage of his medication was increased. R. 18, 442. By July 2009, Plaintiff's symptoms had improved; he reported that he felt better, his anxiety decreased, and he was able to "get out fine." R. 441. In September 2009, Plaintiff reported that his energy was good, his focus and concentration were good, and his appetite was good. R. 636. In October 2009, Plaintiff continued to do well although he isolated himself at times. R. 635.

In January 2010, Plaintiff presented to Quinco Mental Health Centers complaining of panic attacks. R. 604. He was diagnosed with major depressive disorder and rule out anxiety-related disorders. R. 609. Plaintiff attended counseling sessions between January and October 2010. R. 612-25. Over the course of those sessions, Plaintiff was noted to be friendly and cooperative. R. 613-21, 625, 628. Although Plaintiff at times appeared anxious, R. 612, 615-17, 621, other times his mood was reported as "good" or "okay." R. 613-14, 618-20. Only once did the counselor report that Plaintiff appeared depressed. R. 625.

The MSW, Anthony Lake, and the Quinco clinicians are not acceptable medical sources to diagnose a medically determinable impairment. See 20 C.F.R. § 416.913(a) ("We need evidence from acceptable medical sources to establish whether you have a medically determinable impairment(s)). "Acceptable medical sources" includes licensed physicians and psychologists but not nurse practitioners or therapists. Id. at § 416.913(a), (d). Accordingly, the ALJ properly found their opinions were insufficient to establish a medically determinable impairment.

In addition, reports from the consultative examiners undermine the diagnoses from these sources. For example, Dr. Sewell found no indication of depression, anxiety, or other mood disorder. R. 465. Dr. Kennon reported that Plaintiff was unable to provide him information regarding his history of panic attacks or any definitive problems or symptoms. R. 489. Dr. Pickering opined that Plaintiff did not meet the diagnostic criteria for anxiety or depression, "in spite of [Plaintiff's] reported history of having been on medication for anxiety and depression for several years and his involvement with Quinco Community Mental Health Center for counseling and medication." R. 684, 705.

Substantial evidence, as discussed above, supports the ALJ's finding that Plaintiff did not have an additional mental impairment beyond his borderline intellectual functioning that imposed an additional and significant work-related limitation of function. See 20 C.F.R. pt. 404, subpt. P, app. 1, §12.05C.

It is the ALJ's responsibility to determine residual functional capacity based on all the relevant evidence, including medical records, observations of treating physicians and others,

and the claimant's own description of her limitations. See Anderson v. Shalala, 51 F.3d 777 (8th Cir. 1995); 20 C.F.R. §§ 404.1546(c), 416.946(c). Here, the ALJ considered all of the evidence in the record and adequately explained the basis for his residual functional capacity finding. As the ALJ's residual functional capacity was within the "zone of choice" supported by substantial evidence, his finding is upheld. See Mullen v. Bowen, 800 F.2d 535, 545 (6th Cir. 1986) (en banc).

Use of the medical-vocational guidelines is appropriate to meet the Commissioner's burden in a case such as this, where Plaintiff can perform the full range of work at a designated level of residual functional capacity, despite any nonexertional impairments. See Cole v. Secretary, 820 F.2d 768, 772 (6th Cir. 1987) ("A mere allegation of nonexertional limitation is not sufficient to preclude application of the grid; the determining factor is whether the alleged nonexertional limitation is severe enough to alter the conclusion that the claimant could do a full range of sedentary work."); § 200.00(b) of 20 C.F.R. pt. 404, subpt. P, app. 2 (The medical-vocational guidelines take administrative notice of the number of unskilled jobs that exist throughout the national economy at the various functional levels and thus apply when a person is limited to simple work). Therefore, the ALJ properly found that Plaintiff was not disabled under the Act.

Because Plaintiff has failed to establish the threshold requirement of Listing 12.05(C), i.e., significantly subaverage general intellectual functioning <u>with deficits in adaptive functioning</u>, the ALJ's decision is supported by substantial evidence, and the decision of the Commissioner is AFFIRMED. The clerk is directed to enter judgment accordingly.

IT IS SO ORDERED.

 s/ **James D. Todd**
JAMES D. TODD
UNITED STATES DISTRICT JUDGE